**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| MICHAEL BOZAK and WILLIAM LAWSON, individually, and on behalf of others similarly situated,<br><br>        **Plaintiffs,**<br><br>v.<br><br>FEDEX GROUND PACKAGE SYSTEM, INC.,<br><br>        **Defendant.** | CIVIL ACTION NO:<br>3:11-cv-00738-RNC<br><br><br><br><br>APRIL 28, 2014 |

**DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF**
**PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF THE SETTLEMENT,**
**SERVICE PAYMENTS, AND ATTORNEYS' FEES AND COSTS**

I, Justin M. Swartz, declare as follows:

    1.    I am a partner at the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiffs' counsel herein, and co-chair of its Class Action Practice Group. O&G is a 30+ attorney firm based in New York City that focuses on representing plaintiffs in a wide variety of employment matters – including individual and class action litigation – that involve wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

    2.    I have been one of the lawyers primarily responsible for the prosecution of Plaintiffs' claims against Defendant FedEx Ground Package System, Inc. ("Defendant" or "FedEx Ground").

    3.    I make these statements based on personal knowledge and would so testify if called as a witness at trial.

4. FedEx Ground is a shipping company with "hubs" that receive and reroute packages throughout the United States.

5. Plaintiffs are current and former salaried employees of FedEx Ground who worked as a Linehaul Service Manager I, II, or III ("LHSVMs") and whom FedEx classified as exempt from federal and state statutory overtime protections.

6. Before and during the formal litigation of this action, Plaintiffs conducted a thorough identification and investigation into the merits of the claims and defenses and did substantial work prosecuting, and settling these claims.

7. Plaintiffs focused their investigation and legal research on the underlying merits of the claims, the damages to which they were entitled, and the propriety of conditional certification.

**Procedural History**

8. On May 5, 2011, Plaintiff Michael Bozak filed a collective action complaint, alleging on behalf of himself and all other similarly situated employees that Defendant misclassified LHSVMs as exempt and failed to pay them overtime when they worked more than 40 hours in a workweek, in violation of the Fair Labor Standards Act ("FLSA").

9. On July 1, 2013, the Court denied the parties' request that it authorize settlement notice without Bozak's signature.

10. On November 11, 2013, Plaintiff moved to amend his complaint to add a new named plaintiff, William Lawson.

11. On February 4, 2014, the Court granted Plaintiff's motion to amend the Complaint to join William Lawson as a Named Plaintiff.

12. On February 4, 2014, Plaintiffs filed their Amended Complaint.

13. On January 6, 2012, Plaintiff filed a Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA ("216(b) Motion").  ECF No. 54.

14. FedEx Ground simultaneously filed a motion to strike the class allegations. ECF No. 49.  The parties engaged in discovery leading up to this motion practice.

**Discovery**

15. The parties engaged in significant formal and informal discovery before agreeing to resolve this case.  Each side served and responded to written document requests and interrogatories.

16. Defendant deposed named Plaintiff Michael Bozak and produced more than 2,000 pages of documents in response to Plaintiffs' document requests, including corporate policies, payroll records, personnel files, production reports, emails, and memoranda.

17. In addition to reviewing the discovery produced by FedEx Ground, Plaintiffs' Counsel obtained and reviewed documents from Plaintiff Michael Bozak, including job descriptions, pay records, personnel documents, documents related to the Connecticut Department of Labor investigation into FedEx Ground's alleged wage and hour violations, and corporate documents.  Plaintiffs' Counsel also interviewed other individuals who held the same job title as Plaintiff Bozak.

18. Additionally, Plaintiffs' Counsel performed damage calculations after FedEx Ground produced data related to the weeks worked and rate of pay for LHSVMs for settlement purposes.

**Settlement Negotiations**

19. On June 11, 2012, the Parties agreed to enter into formal settlement negotiations and requested that the Court enter a stay of all discovery.

20. Recognizing the uncertain legal and factual issues involved, the parties reached the settlement pending before the Court after two settlement conferences before experienced JAMS mediators, as well as in negotiations conducted by telephone and electronic mail through counsel.

21. At all times during the settlement negotiation process, negotiations were conducted at arm's-length.

22. On July 18, 2012, the parties participated in a mediation session of this matter which was conducted by experienced class action mediator Michael Young of JAMS.

23. At the mediation, the parties narrowed the issues in dispute and agreed on many material points, but did not reach agreement on all settlement terms.

24. Although named Plaintiff Michael Bozak had authorized counsel to negotiate the class-wide settlement, he decided not to sign a settlement agreement that released his individual wage claims and his individual retaliation claims.

25. On March 21, 2014, the parties attended a full-day settlement conference with mediator and former Magistrate Judge Hon. Theodore Katz (Ret.) of JAMS.

26. The parties have now mutually agreed to resolve this lawsuit on the terms and conditions set forth in the Settlement Agreement and Release ("Settlement Agreement"), attached hereto as **Exhibit A**.

27. In Plaintiffs' counsel's estimation, the settlement represents a significant percentage of the recovery that Plaintiffs would have achieved had they prevailed on all of their

claims, survived an appeal, and sought to enforce and collect upon a judgment.

28.     The facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery of unpaid wages. The factual nature of the claims and defenses, including the issue of whether Linehaul Service Managers were properly classified as exempt from overtime, presented challenges to establishing certification of the FLSA collective, class certification, and liability.

**The Terms of the Settlement Agreement**

29.     The settlement was the result of vigorously contested litigation with substantial formal and informal discovery, motion practice, and arm's-length negotiation conducted over several years.

30.     The settlement will resolve all of the federal and state wage and hour claims of the Eligible Settlement Class Members who choose to participate in the settlement ("Participating Plaintiffs").

31.     Defendant has agreed to pay Two Million Sixty Thousand Dollars and No Cents ($2,060,000.00), which covers Participating Plaintiffs' settlement awards, attorneys' fees and costs, the Settlement Claims Administrator's fees and costs and the employer payroll taxes; and a service award to the Named Plaintiff Signatory ("Gross Settlement Amount"). Ex. A (Settlement Agreement) ¶¶ 1.11; 4.1 (A).

32.     Rust Consulting, a Claims Administrator selected jointly by the Parties, will be responsible for mailing the proposed Notice of Settlement and Claim/Consent Form to all of the Eligible Settlement Class Members within 14 days of the Court's approval of this action. (*Id.* ¶ 3.7). A copy of the Proposed Notice of Settlement is attached hereto as **Exhibit B**; a copy of the Proposed Claim/Consent Form is attached hereto as **Exhibit C**.

33. The proposed notice alerts Eligible Settlement Class Members to the terms of the settlement, informs them of the scope of the release, and informs them that they are required to complete and timely return the Claim/Consent Form if they wish to be included in the settlement and receive payment.  Ex. B (Proposed Notice).

**Service Payments**

34. The Settlement Agreement provides that, with Court approval, the Named Plaintiff signatory will receive a service payment in recognition of their efforts in obtaining the benefits of the settlement for the Participating Plaintiffs.  Ex. A (Settlement Agreement) ¶ 4.3.

35. The Named Plaintiff signatory agreed to bring the action in his name and to testify if there were a trial.  In so doing, he assumed the risk of retaliation.  In addition, the Named Plaintiff signatory assisted in the preparation of the complaints, provided Plaintiffs' Counsel with relevant documents, submitted declarations in support of Plaintiffs' claims, assisted counsel in the investigation of Plaintiffs' claims and the finalization of this settlement.

36. The Named Plaintiff Signatory seeks a $10,000 service payment.  *Id.* ¶ 4.3(A).

**Attorneys' Fees and Costs**

37. In the Settlement Agreement, Defendant agrees that Plaintiffs' Counsel will ask the Court to approve payment of one-third, or $686,666.66, of the Gross Settlement Amount as attorneys' fees and costs.  (*Id.* ¶ 4.2.)

38. Since the filing of the original complaint in May 2011, O&G has spent more than 1,404 attorney, paralegal, and support staff hours prosecuting this case. O&G ordinarily and regularly bills clients on an hourly fee basis, based upon each attorney's standard hourly rate.  Currently, O&G's rates range from $525 to $975 per partner's hour, $550 to $650 per counsel's hour, $225 to $400 per associate's hour, $215 per law clerk's hour, and $150 to $185

6

per paralegal's hour.  The firm's clients regularly accept and pay O&G's hourly rates.  Based upon O&G's records, in 2010, approximately 30% of the hours O&G lawyers spent on client matters were billed to paying clients.  There is no shortage of hourly work at O&G.  Thus, when O&G lawyers spend time on contingency matters, they do so at significant opportunity cost for the firm.  Indeed, O&G frequently turns away hourly matters, including hourly litigation matters, in order to enable its attorneys to work on contingency matters, primarily (though not exclusively) class and collective actions

39. As of April 23, 2014 Plaintiffs' Counsel's total lodestar on the case was $650,393.75 (with $563,133.75 incurred by O&G, $66,605.00 incurred by the Hayber Law Firm, and $20,665.00 incurred by the Quinn Law Firm).  Attached as **Exhibit D** is a summary of the time spent by each attorney, paralegal and support staff member at O&G, the Hayber Law Firm and the Quinn Law Firm as well as detailed time records. These hours were compiled from contemporaneous time records maintained by each attorney, paralegal, and support staff participating in the case.

40. Plaintiff's Counsel does not seek a lodestar multiplier, but rather will almost certainly recover less than their actual lodestar.

41. Plaintiffs' Counsel's efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result.

42. As of April 23, 2014 Plaintiffs' Counsel's total cost incurred on the case was $30,557.00, including costs for electronic research, court fees, court reporters, deposition transcripts, postage and courier fees, working meals, photocopies, telephone calls, travel and Plaintiffs' portion of the mediator's fees.  Attached as **Exhibit E** is a summary of out-of-pocket expenses incurred by O&G.

43. The requested attorneys' fees are not based solely on time and effort already expended; they are also meant to compensate Plaintiffs' Counsel for time Plaintiffs' Counsel will be required to spend administering the settlement in the future. In our experience, administering settlements of class and collective actions requires an ongoing commitment. Plaintiffs' Counsel anticipates that once Notice of the Settlement and Claim/Consent Form is mailed, Eligible Settlement Class Members will contact our firms with questions regarding the settlement. Plaintiffs' Counsel and staff will expend substantial time responding to questions about the case and will continue to do so as the settlement administration continues.

**Settlement Claims Administration**

44. The parties retained Rust Consulting, a wage and hour claims administrator, to serve as the Settlement Claims Administrator ("Claims Administrator"). The Claims Administrator's fees of $18,000 will be paid from the Fund. Ex. A (Settlement Agreement) ¶¶ 1.17, 1.27, 3.2.

45. Plaintiffs have submitted a Proposed Order, attached hereto as **Exhibit F**, for the Court's convenience.

I declare under penalty of penalty of perjury under the laws of Connecticut and the United States that the foregoing is true and correct.

Dated: April 28, 2013
New York, New York

By:    */s/ Justin M. Swartz*
       Justin M. Swartz

**OUTTEN & GOLDEN LLP**
Justin M. Swartz (phv03853)
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone: (212) 245-1000

8

## **CERTIFICATION OF SERVICE**

I hereby certify that on **April 28, 2014** a copy of the foregoing documents were filed electronically and service made by certified mail to anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system or by certified mail for anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

                                                                            */s/ Justin M. Swartz*
                                                                             Justin M. Swartz