FILED

2014 JUL 21 P 3: 01

US DISTRICT COURT

| | | |
|---|---|---|
| MICHAEL BOZAK and WILLIAM LAWSON, individually, and on behalf of others similarly situated, | : : : : | CIVIL ACTION NO: 3:11-cv-00738-RNC |
| Plaintiffs, | : : | |
| v. | : : | |
| FEDEX GROUND PACKAGE SYSTEM, INC., | : : | |
| Defendant. | : : | |

## [PROPOSED] ORDER AND JUDGMENT APPROVING SETTLEMENT, SERVICE PAYMENTS, AND ATTORNEYS' FEES AND COSTS

The Plaintiffs are Linehaul Service Managers ("LHSVMs") employed by FedEx Ground Package System, Inc. ("Defendant" or "FedEx Ground"). Plaintiffs were classified by Defendant as exempt from federal and state statutory overtime protections.

On May 5, 2011, Plaintiff Michael Bozak ("Plaintiff Bozak") filed a collective action complaint in the United States District Court for the District of Connecticut, alleging: (1) on behalf of himself and all other similarly situated employees, pursuant to 29 U.S.C. § 216(b), that Defendant misclassified LHSVMs as exempt and failed to pay them overtime when they worked more than 40 hours in a workweek, in violation of the Fair Labor Standards Act ("FLSA"); and (2) on behalf of himself individually that this misclassification violated the Connecticut Minimum Wage Act. On February 4, 2014, the Court granted permission to amend the Complaint to join William Lawson ("Plaintiff Lawson") as a Named Plaintiff.

On January 6, 2012, Plaintiff Bozak filed his motion for conditional certification and court-authorized notice. ECF No. 54. FedEx Ground simultaneously filed a motion to strike the

class allegations. ECF No. 49. The Court denied Defendant's motion to strike the class

allegations. ECF No. 90. The Court denied Plaintiff's motion for conditional certification

without prejudice to re-filing after further discovery. ECF No. 90. Following the Court's ruling,

the parties agreed to request a stay of the litigation and engage in settlement discussions.

On July 18, 2012, the parties attended a full-day private mediation with Michael Young

of JAMS. Declaration of Justin M. Swartz ("Swartz Decl.") ¶ 22. At the mediation, the parties

narrowed the issues in dispute and agreed on many material points, but did not reach agreement

on all settlement terms. Swartz Decl. ¶ 23. Although Plaintiff Bozak had authorized counsel to

negotiate the class-wide settlement, he decided not to sign a settlement agreement that released

his individual wage claims and his individual retaliation claims. Swartz Decl. ¶ 24. Upon

informing the Court of Plaintiff Bozak's position with regard to the settlement, the Court

requested supplemental briefing regarding the Court's authority to authorize settlement notice

and ultimately approve a settlement that the named plaintiff might not join. ECF No. 114.

On October 2, 2013, Defendant filed a request to compel Plaintiff Bozak to appear before

the Court in person. ECF No. 127. The Court granted this request the following day. On

October 3, 2013, Plaintiff filed a motion to lift the stay on discovery, for issuance of a case

management plan, and for reconsideration of the Court's order compelling Plaintiff Bozak to

attend an in-person conference. ECF No. 129. The Court ordered that all parties attend an in-

person conference on October 11, 2013.

Plaintiff's counsel attended the conference, but Bozak did not. The Court dismissed the

collective action allegations in the Complaint and indicated that it would also dismiss Plaintiff's

individual claims unless he explained his failure to appear. ECF No. 133. The Court ordered

Plaintiff to show cause why his individual claims should not be dismissed by November 11,

2013. *Id.* Meanwhile, William Lawson, who worked as an LHSVM in a FedEx Ground facility in Reno, Nevada, retained Plaintiff's counsel and agreed to serve as an additional named plaintiff.

On November 11, 2013, Plaintiff filed a motion for reconsideration of the Court's order to dismiss the collective action, to lift the stay on discovery, to compel production of documents to support Plaintiff's motion for conditional certification and for equitable tolling. ECF No. 135. Plaintiff also filed a motion to amend the Complaint to add Lawson as a named plaintiff. ECF No. 137. On February 4, 2014, the Court ordered that Lawson be permitted to join the action as a named plaintiff and the parties agreed to re-engage in settlement negotiations. ECF No. 157.

On March 21, 2014, the parties attended a full-day settlement conference with mediator and former Magistrate Judge Hon. Theodore Katz (Ret.) of JAMS. Swartz Decl. ¶ 25. As a result of this mediation, the parties reached a $2,060,000.00 settlement. Ex. A (Settlement Agreement) ¶ 4.1. The terms of the settlement have been set out in a formal written Settlement and Release ("Settlement Agreement"). *Id.* ¶ 33. Plaintiff Lawson now seeks approval of the settlement, service payment, and payment for attorneys' fees and costs.

Having considered Plaintiffs' Unopposed Motion for Approval of the Settlement, Service Payment, and Attorneys' Fees and Costs, the supporting declarations and exhibits thereto, and the complete record in this matter, for the reasons set forth below and for good cause shown,

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

*APPROVAL OF THE SETTLEMENT*

1. The Court approves and incorporates by reference all of the definitions contained in the Settlement Agreement. The Court has jurisdiction over the subject matter of the Litigation,

the Eligible Settlement Class Members and Defendant.

2. The Court hereby approves the settlement on behalf of all Participating Plaintiffs.

3. Collective actions under Section 216(b) of the FLSA require workers to affirmatively opt-in to the litigation, unlike in a Federal Rule of Civil Procedure 23 class action. *See Ansoumana v. Gristedes Operating Corp.*, 201 F.R.D. 81, 84-85 (S.D.N.Y. 2001) ("[t]here is no opt-in requirement, analogous to the procedure authorized by the FLSA, under the [NYLL]").

4. Thus, because, under the FLSA, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated by Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989), FLSA collective actions do not implicate the same due process concerns as Rule 23 actions. *See Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *7 (S.D.N.Y. May 11, 2010) ("The standard for approval of a FLSA settlement is lower than for a Rule 23 settlement because a FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement."); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010). Accordingly, the exacting standards for approval of a class action settlement under Rule 23 do not apply to an FLSA settlement under the collective action provisions of 29 U.S.C. § 216(b).

5. Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982); *Clark*, 2010 WL 1948198, at *7; *McMahon*, 2010 WL 2399328, at *6. Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Aros v. United Rentals, Inc.*, 2012 U.S. Dist. LEXIS 104429 at *6-8 (D. Conn. July 26, 2012) (Hall, J.); *Dixon v. Zabka*, 2013 U.S. Dist. LEXIS

4

77715 at *5-6 (D. Conn. May 23, 2013) (Shea, J.); *Lynn's Food Stores*, 679 F.2d at 1353-54. If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*; 679 F.2d 1354; *Clark*, 2010 WL 1948198, at *7; *McMahon*, 2010 WL 2399328, at *6.

6. The FLSA settlement in this case meets the standard for approval. The settlement was the result of vigorously contested litigation with substantial formal and informal discovery, motion practice, and arm's-length negotiation and mediation, conducted over several years. *Aros*, 2012 U.S. Dist. LEXIS at *7. Plaintiffs conducted a thorough investigation, including interviews with putative collective action members and production and review of paper discovery. In addition, Defendant took the deposition of Plaintiff Bozak and conducted its own paper discovery. Swartz Decl. ¶ 15-16.

7. Recognizing the uncertain legal and factual issues involved, the parties reached the settlement pending before the Court after two settlement conferences before experienced JAMS mediators, as well as in negotiations conducted by telephone and electronic mail through counsel. *Id.* ¶¶ 14-20. At all times during the settlement negotiation process, negotiations were conducted at arm's-length. *Id.* ¶ 22. Accordingly, the Settlement Agreement resolves a clear and actual dispute under circumstances supporting a finding of fair and reasonable arm's-length settlement, and is therefore approved, including the release of claims and all other terms, as fair, just, reasonable and adequate as to the settling Parties.

### *APPROVAL OF FORM OF NOTICE AND NOTICE PROCESS*

8. The moving parties have also presented to the Court, for its review, a proposed Notice and a plan to provide notice to the Eligible Settlement Class Members of the terms of the Settlement and the options facing the Settlement Class. The form of the notice attached to the

5

Settlement Agreement is approved as the notice to be sent in this action (the "Notice"). After the signing of this Order, Plaintiffs shall make any necessary corrections to the dates in the Notice.

9. The Court also finds that the plan for sending the Notice as proposed by the moving parties is the best practical plan under the circumstances.

10. Notice of the proposed Settlement shall be given by mailing the "Notice of Settlement" by first class mail, postage prepaid, to all Eligible Settlement Class Members pursuant to the applicable provisions in the Settlement Agreement, at their Last Known Addresses, within fourteen (14) days after entry of this Order. Defendant shall provide the Settlement Administrator with the information necessary to conduct this mailing as set forth in the Settlement Agreement.

11. Settlement Class Members shall have a period of sixty (60) days from the mailing of the Notice within which to submit to the Settlement Administrator a Consent/Claim Form to participate in the settlement.

*RELEASE OF CLAIMS*

12. In the event that the Effective Date occurs, Plaintiff Lawson and all Participating Plaintiffs will be deemed to have forever released and discharged the Released Federal Law Claims and Released State Law Claims as provided in the Settlement Agreement. In the event that the Effective Date does not occur for any reason whatsoever, this Order and the Settlement Agreement shall be deemed null and void and shall have no effect whatsoever in this Litigation or in any other litigation or proceeding.

13. In the event that the Effective Date occurs, all of the Released Federal Law Claims and Released State Law Claims are dismissed with prejudice as to every Participating Plaintiff who returns a Consent/Claim Form or timely negotiates a settlement check, permanently barring

each such Participating Plaintiff from filing, commencing, prosecuting, or pursuing any Released

Claims, whether or not on a class or collective action basis, or participating in any class or

collective action or any other proceeding (including arbitration) involving such claims.

### *AWARD OF SERVICE PAYMENT TO PLAINTFF LAWSON*

14. The Court finds reasonable a service award of $10,000 for the Plaintiff Lawson. The

amount shall be paid from the Gross Settlement Amount.

15. Courts acknowledge that named plaintiffs in class and collective actions play a

crucial role in representing others. *See, e.g, Aros*, 2012 U.S. Dist. LEXIS 104429 at *8-12;

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y.

Feb. 9, 2010), at *1 ("Enhancement awards for class representatives serve the dual functions of

recognizing the risks incurred by named plaintiffs and compensating them for their additional

efforts."); *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y.

June 22, 2007) ("in employment litigation, the plaintiff is often a former or current employee of

the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class

as a whole, undertaken the risk of adverse actions by the employer or co-workers"); *Clark*, 2010

WL 1948198, at *9; *McMahon*, 2010 WL 2399328, at *8-9 (recognizing burdens sustained by a

plaintiff in lending himself or herself to the prosecution of claims). *See also* Nantiya Ruan,

*Bringing Sense to Incentive Payments: An Examination of Incentive Payments to Named*

*Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395

(2006) (discussing the importance of aggregation of claims in the prosecution of civil and wage

and hour rights).

16. "Incentive awards . . . are within the discretion of the court." *Frank v. Eastman*

*Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (discussing service awards in a Rule 23 class

action settlement). In examining the reasonableness of service awards, courts consider: (1) the personal risk incurred by the named plaintiffs; (2) time and effort expended by the named plaintiffs in assisting the prosecution of the litigation; and (3) the ultimate recovery in vindicating statutory rights. *See id.* Here, the Plaintiff Lawson satisfies all three factors.

17. First, in this settlement on behalf of a FLSA § 216(b) collective, just as in the Rule 23 class action settlements cited above, the Plaintiff Lawson agreed to appear in this action as a lead plaintiff and to testify if there was a trial. Swartz Decl. ¶ 35. In so doing, he assumed the risk of retaliation. *Id. See Frank*, 228 F.R.D. at 187 (Incentive awards are "particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers"). *See also Velez*, 2007 WL 7232783, at *7 (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded.").

18. Even where, as here, there is no evidence or indication of any retaliation by Defendant, class representatives merit recognition for assuming the risk of retaliation for the sake of absent class members. *See Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

19.    Second, the Plaintiff Lawson should be awarded a service payment for the work he undertook on behalf of the Eligible Settlement Class Members. He expended time and effort to assist in the preparation of the amended complaint, provided Plaintiffs' Counsel with relevant information, and assisted counsel in the investigation of Plaintiffs' claims and the finalization of this settlement. Swartz Decl. ¶ 35. Courts recognize the important factual knowledge that named plaintiffs bring to employment class and collective actions, including information about employer policies and practices that affect compensation. *See Frank*, 228 F.R.D. at 187-88 (recognizing the important role that class representatives play as the "primary source of information concerning the claims[,]" including by responding to counsel's questions and reviewing documents).

20.    Last, the amount of the requested service award is consistent and reasonable with awards given in class and collective actions. *See, e.g., Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (approving awards of $10,000 for each class representative); *Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351, 2012 WL 2775019, at *4 (S.D.N.Y. July 6, 2012) (approving service awards of $10,000 for each named plaintiff); *Alli v. Boston Mkt. Corp.*, No. 10 Civ. 00004, 2012 WL 1356478, at *3 (D. Conn. Apr. 17, 2012) (approving service awards of $12,000 for named plaintiffs); *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14-15 (S.D.N.Y. Apr. 16, 2012) (approving service payments of $10,000 and $15,000); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving awards of $30,000, $15,000, and $7,500 to class representatives and opt-ins); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *9 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 and $5,000); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010)

(approving awards of $15,000 and $10,000 to named plaintiffs). Accordingly, a $10,000 service payment to Plaintiff Lawson is approved.

### *AWARD OF FEES AND COSTS TO PLAINTIFFS' COUNSEL*

21. The Court awards Plaintiffs' Counsel a total of $686,666.00 in attorneys' fees and $30,557.00 in actual costs and expenses from the Gross Settlement Amount.

22. The Court awards Plaintiffs' Counsel $686,666.66 in attorneys' fees, which is one-third of the Gross Settlement Amount.

23. This amount is reasonable. Fee awards in wage and hour cases are meant to "encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg*, No. 08 Civ. 7840, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010).

24. Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA. *See Braunstein v. E. Photo Labs., Inc.*, 600 F.2d 335, 336 (2d Cir. 1975), *cert. denied*, 441 U.S. 944 (1979); *Aros*, 2012 U.S. Dist. LEXIS at * 12-21; *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *6 (E.D.N.Y. Feb. 18, 2011) (citing cases); *Vazquez v. Ranieri Cheese Corp.*, No. 07 Civ. 464, 2011 WL 554695, at *4 (E.D.N.Y. Feb. 7, 2011) ("[T]he fee provisions contained in the FLSA and New York Labor Law were designed in part to secure legal representation for plaintiffs whose wage and hour grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements") (internal quotation marks and citation omitted). *See also McMahon*, 2010 WL 2399328, at *7.

25. In applying the common fund method, the Supreme Court, the Second Circuit, and other Circuit Courts, have held that it is appropriate to award attorneys' fees as a percentage of

10

the entire maximum gross settlement fund, even where amounts to be paid to settlement class members who do not file claims will revert to the Defendants. *See Boeing Co. v. Van Gemert, et al.*, 444 U.S. 472, 480-81 (1980); *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423 (2d Cir. 2007); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1296-97 (11th Cir. 1999); *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026 (9th Cir. 1997) (reversing district court award of 33 percent of the claimed fund and awarding attorneys' fees of 33 percent of the available fund).

26. In *Masters*, the Second Circuit recognized that "[t]he entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available whether claimed or not." *Id.* at 437; *see also, e.g., Dahingo v. Royal Caribbean Cruises, Ltd.*, 312 F.Supp.2d 440 (S.D.N.Y. 2004) (Francis, J.) (noting that attorneys' fees equivalent to one-third of common fund had been approved notwithstanding the fact that a significant portion of fund was unclaimed and reverted to defendants).

27. In class and collective action wage and hour lawsuits, public policy favors a common fund attorneys' fee award. *Aros*, 2012 U.S. Dist. LEXIS 104429 at *16; *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011). Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general," attorneys who fill that role must be adequately compensated for their efforts. *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 4357376, at *13 (S.D.N.Y. Sept. 16, 2011); *deMunecas v. Bold Food, LLC*, No. 09 Civ. 440, 2010 WL 3322580, at *8 (S.D.N.Y. Aug. 23, 2010); *Sand*, 2010 WL 69359, at *3 (statutory attorneys' fees are meant to "encourage members of the bar to provide legal services to those whose wage claims might

otherwise be too small to justify the retention of able, legal counsel"). If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. *Willix*, 2011 WL 754862, at *6; *McMahon*, 2010 WL 2399328, at *7; *Sand*, 2010 WL 69359, at *3 ("But for the separate provision of legal fees, many violations of the Fair Labor Standards Act would continue unabated and uncorrected").

28. The one-third amount that Plaintiffs request is typical of fee awards in this Circuit. *See, e.g., Capsolas v. Pasta Resources Inc.*, Case No. 10 Civ. 5595, 2012 WL 4760910, at *8 (S.D.N.Y. Oct. 5, 2012) (fee request of one-third is "consistent with the norms of class litigation in this circuit") (internal quotation marks omitted); *Willix v. Healthfirst Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (same).

29. Plaintiffs' counsel's efforts to date have been without compensation, and their entitlement to be paid has been wholly contingent upon achieving a good result. *Id.* ¶ 43. The fee Plaintiffs' counsel request is also reasonable because they will continue to perform work on behalf of the collective in implementing the settlement, but will not make a supplemental fee application. Swartz Decl. ¶ 43. Plaintiffs' Counsel has a continuing obligation to represent the collective during the settlement approval process and the disbursement phase.

30. In this case, Plaintiffs' Counsel did substantial work identifying, investigating, prosecuting, and settling these claims. Since the filing of the original complaint in May 2011, Outten & Golden LLP has spent more than 1,404 attorney, paralegal, and support staff hours prosecuting this case. Swartz Decl. ¶ 38. The Hayber Law Firm and Quinn Law Firm combined spent more than 258 attorney, paralegal, and support staff hours on the case. Declaration of Richard Hayber ¶ 14; Declaration of Anthony J. Pantuso, III ¶ 15. Multiplied by each attorney's, paralegal's, and staff member's hourly rate, this results in a total lodestar

amount of approximately $650,394. *Id.* ¶ 41 & Ex. D, E (Summary of Attorney and Staff Time and Litigation Costs and Expenses).

31.  The work that Plaintiffs' Counsel has performed in litigating and settling this case demonstrates their commitment to the FLSA collective and to representing the collective's interests. Plaintiffs' Counsel has committed substantial resources for over three years to prosecuting this case.

32.  The Court awards Plaintiffs' Counsel $30,557.00 in attorneys' costs.

33.  Plaintiffs' Counsel has incurred over $30,557.00 in out of pocket costs prosecuting this case, including costs for electronic research, court fees, court reporters, deposition transcripts, postage and courier fees, working meals, photocopies, telephone calls, travel and Plaintiffs' portion of the mediator's fees. Swartz Decl. ¶ 42. Adding these out of pocket expenditures to the $686,666.66 request for attorneys' fees, Plaintiffs' Counsel seeks attorneys' fees and costs from the Settlement Fund in the amount of $717,223.66. While their lodestar through April 21, 2014 is approximately $650,394, the requested one-third payment will in all likelihood be less than their loadstar after the completion of the settlement process and less than what Courts have awarded in similar cases. Swartz Decl. ¶ 39-40. In fact, "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman*, 2013 WL 1803736, at *13; *see also Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); *Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six."); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); *see, e.g., Steiner v. Am.*

*Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"); *Ramirez v. Lovin' Oven Catering Suffolk, Inc.*, No. 11 Civ. 520, 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); *Davis*, 827 F. Supp. 2d at 184-86 (awarding multiplier of 5.3 in wage and hour class action); *Buccellato v. AT&T Operations, Inc.*, No. 10 Civ. 463, 2011 WL 3348055, at *2 (N.D. Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, No. 05 Civ. 11148, 2009 WL 2408560, at *2 (D. Mass. Aug. 3, 2009) (awarding multiplier of 8.3); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 803 (S.D. Tex. 2008) (awarding multipler of 5.2); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 768 (S.D. Ohio 2007) (awarding multiplier of six times); *In re Rite Aid Sec. Litig.*, 362 F. Supp. 2d 587, 589-90 (E.D. Pa. 2005) (awarding multiplier of seven times); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 371 (S.D.N.Y. Jan. 29, 2002) ("modest multiplier" of 4.65 in wage and hour class action was "fair and reasonable"); *In re RJR Nabisco, Inc. Sec. Litig.*, No. 88 Civ. 7905, 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166, 167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74). Here, Plaintiffs' Counsel do not seek a lodestar multiplier, but rather will almost certainly recover less than their actual loadstar.

Plaintiffs' Counsel anticipates that they will be required to spend substantial additional time administering the settlement in the future, including answering questions from Participating Plaintiffs about the case and working with the Claims Administrator. Here, Plaintiffs' Counsel does not seek a lodestar multiplier, but rather will almost certainly recover less than their actual lodestar. *Id.* ¶ 42. Accordingly, the parties' agreement that Plaintiffs' Counsel recover

14

attorneys' fees in the amount of one-third of the Gross Settlement Amount, or $686,666.66, and $30,557.00 in attorneys' costs, is reasonable.

34. The attorneys' fees and costs awarded shall be paid from the Gross Settlement Amount.

35. If no appeal of this Approval Order has been filed, within thirty (30) days after the Notice Response Deadline (and if an appeal has been filed regarding this Approval Order and/or Judgment within thirty (30) days after the Effective Date) the Settlement Administrator will simultaneously distribute the funds in the settlement account, by mail or by wire, by making the following payments:

a. Paying Plaintiffs' Counsel one-third of the Gross Settlement Amount ($686,666.66) as attorneys' fees;

b. Paying Plaintiffs' Counsel $30,557.00 as attorneys' costs;

c. Paying a service award of $10,000 to Plaintiff Lawson;

d. Paying the Settlement Checks to Participating Plaintiffs in accordance with the allocation plan described in the Settlement Agreement and less applicable taxes and withholdings;

36. Any unclaimed portion from the Gross Settlement Amount shall be paid in accordance with the terms of the Settlement Agreement.

37. The Settling Parties are to bear their own costs and attorneys' fees, except as otherwise provided in the Settlement Agreement.

### *CONTINUING JURISDICTION TO ENFORCE SETTLEMENT*

38. The Court retains jurisdiction over this action for the purposes of supervising the implementation, enforcement, construction, administration and interpretation of the Settlement

Agreement and this Judgment, including for overseeing the distribution of settlement funds. The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.

39. This Document shall constitute a judgment for purposes of Federal Rule of Civil Procedure, Rule 58.

It is so ORDERED this 31 day of July , 2014

/s/ Robert N. Chatigny
Honorable Robert N. Chatigny
United States District Judge

# Exhibit 2

**NOTICE OF PROPOSED SETTLEMENT OF COLLECTIVE**
**ACTION LAWSUIT**

[NAME]
[ADDRESS]
[CITY, STATE ZIP]

---

# If you were a Linehaul Service Manager I, II, or III employed by FedEx Ground Package System, Inc. you may be entitled to a payment from a proposed settlement in a collective action lawsuit.

*A federal court authorized this notice. This is not a solicitation from a lawyer.*

- This notice pertains to any individual who was employed as a Linehaul Service Manager I, II, or III by FedEx Ground Package System. Inc. ("FedEx Ground") between August 1, 2010 and March 31, 2013 ("LHSVMs").

- Two former LHSVMs have sued FedEx Ground, alleging that FedEx Ground failed to properly pay them and other similarly situated LHSVMs for all of the hours they worked. They filed the lawsuit as a collective action under the Fair Labor Standards Act ("FLSA"). FedEx denies these allegations, and maintains that its LHSVMs were fairly and properly compensated and that it has complied with the law at all times.

- To avoid the burden, expense, inconvenience, and uncertainty of continued litigation, FedEx Ground has agreed to pay up to $2,060,000.00 into a fund that will be used to pay current and former LHSVMs who qualify for a settlement payment, as well as to pay attorneys' fees, service awards, litigation costs, and the expenses of administering the settlement.

- Under the allocation formula contained in the settlement, you are entitled to receive approximately $_____, half of which is subject to deductions for applicable taxes and withholdings, like any other paycheck. This amount is based on the number of weeks you worked for FedEx Ground as a LHSVM. As described more fully below in Paragraphs 3 and 9 of this Notice, to participate in the settlement and receive a settlement payment you must mail a properly completed Consent Form to the Claims Administrator, postmarked no later than _____.

- Neither Plaintiff's Counsel nor FedEx Ground makes any representations concerning tax consequences of this settlement or your participation in it, and you are advised to seek your own personal tax advice prior to acting in response to this Notice.

- Your legal rights may be affected. You have a choice to make:

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **RETURN THE CONSENT FORM** | By returning a properly completed Consent Form, you will signal your agreement to participate in the settlement and will receive a settlement payment after the final judgment date. |
| **DO NOT RETURN THE CONSENT FORM** | If you do not wish to participate in, or be bound by, the settlement, you should not return the Consent Form. If you do not mail a properly completed Consent Form postmarked by _____, you will not receive a settlement payment. |

- These rights and options are explained in this notice.

- The Court in charge of this case has approved the settlement. Payments will be made after the final judgment date which means after any appeals, if any, are resolved.

## BASIC INFORMATION

### 1. Why did I get this notice?

FedEx Ground's records state that you worked as a LHSVM, as defined above, between August 1, 2010 and March 31, 2013. The Court ordered that you be sent this notice because you have a right to know about a settlement of a collective action lawsuit, and about all of your options under the settlement. After any appeals are heard, payments will be mailed to settlement class members who send in their Consent Form.

This notice explains the lawsuit, the settlement, your legal rights, and what benefits are available.

The Court overseeing this case is the United States District Court for the District of Connecticut. This lawsuit is known as *Bozak v. FedEx Ground Package System, Inc.*, No. 11-cv-00738-RNC.

### 2. What is this lawsuit about?

This lawsuit claims that FedEx Ground improperly classified LHSVMs as exempt employees who are not entitled to receive overtime pay under state and federal wage and hour laws. Because they were allegedly misclassified as exempt, the lawsuit claims that FedEx Ground failed to pay the LHSVMs overtime pay for the time they worked in excess of 40 hours a week. FedEx Ground believes that LHSVMs were properly classified and that it has complied with the law at all times.

### 3. What is a collective action?

In a "Collective Action," one or more people called "Named Plaintiffs" sue on behalf of people who are believed to have similar claims. However, other LHSVMs who have similar claims do not become part of the Collective Action until they opt into the Collective Action. You may opt into this Collective Action lawsuit and become a "Collective Action Member" to participate in the settlement by signing and returning the enclosed Consent Form. A settlement check will be mailed to you once the final judgment date has occurred.

### 4. Why is there a settlement offer?

The Court did not decide in favor of Plaintiff or Defendant. Instead, the parties engaged in settlement negotiations as a result of which FedEx Ground made a settlement offer that Plaintiff's Counsel believes is fair and reasonable and will avoid the cost of further litigation and a trial, and allow the people affected to get compensation.

## WHO CAN PARTICIPATE IN THE SETTLEMENT

### 5. How do I know if I will be included in the settlement?

After the final judgment date you will receive a settlement check if you worked for FedEx Ground as a LHSVM, as defined above, between August 1, 2010 and March 31, 2013, **and** you have signed and returned the enclosed Consent Form.

### 6. I am not sure if I should be included.

If you are not sure whether you should be included, you can ask for free help. You can contact the Settlement Claims Administrator or Plaintiff's Counsel as follows:

Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000 or toll-free at (877) 468-8836
om@outtengolden.com

The Hayber Law Firm, LLC
221 Main Street, Suite 502
Hartford, CT 06106
(860) 522-8888
rhayber@hayberlawfirm.com

[SETTLEMENT ADMIN INFO]

3

# THE SETTLEMENT BENEFITS – WHAT YOU GET

### 7. What does the settlement provide?

FedEx Ground has agreed to pay up to $2,060,000.00 into a fund to be divided among current and former LHSVMs as defined above. The settlement fund covers payments to Plaintiff's Counsel for attorneys' fees and costs, a payment to the individual who represented the LHSVMs in the case and this settlement and the costs of administrating the settlement. The remaining amount, after attorneys' fees and costs and administrative fees have been deducted, shall be divided among Class Members based on the number of full work weeks they worked for FedEx Ground.

### 8. How much will my payment be?

Based on the formula in the settlement you will be entitled to receive approximately $_____
_____, half of which is subject to deductions for applicable taxes and withholdings like any other paycheck. The allocation formula takes into account the number of full work weeks you worked.

# HOW YOU GET A PAYMENT

### 9. How can I get my payment?

To get your payment, you must return a properly completed Consent Form to the Claims Administrator postmarked no later than _____. If you return a properly completed Consent Form to the Claims Administrator by the deadline, you will be sent a settlement check after all appeals, if any, have been exhausted.

### 10. What am I giving up to join the Collective Action and get a payment?

If you send in your Consent Form to become part of the Collective Action and/or you cash your settlement check, you cannot sue, continue to sue, or be a party in any other lawsuit against FedEx Ground about the legal issues in this case. It also means that all of the Court's orders will apply to you and legally bind you.

# THE LAWYERS REPRESENTING YOU

### 11. Do I have a lawyer in this case?

Yes. The law firms of The Hayber Law Firm, LLC, 221 Main Street, Suite 502 Hartford, Connecticut 06106 and Outten & Golden LLP, 3 Park Avenue, 29th Floor New York, New York 10016, represent you and the other LHSVMs who join the case. You will not be charged separately for these lawyers. Their fees are being paid from the total settlement fund. If you want to be represented by your own lawyer, you may hire one at your own expense.

## 12. How will the lawyers be paid?

Plaintiff's Counsel asked and the Court approved payment of one-third of the settlement fund for attorneys' fees and $30,557.00 for costs and expenses. These fees compensate Plaintiff's Counsel for investigating the facts, litigating the case, and negotiating the settlement. The cost of the settlement administrator will also come from the settlement fund.

# GETTING MORE INFORMATION

## 13. Are there more details about the settlement?

This notice summarizes the settlement. More details are in the Settlement Agreement presented to the Court. You can get a copy of the Settlement Agreement by sending a request, in writing, to:

**[INSERT Details re Administrator]**

## 14. How do I get more information?

If you have other questions about the settlement, you can contact the Settlement Claims Administrator, or Plaintiff's Counsel at the addresses and/or telephone numbers below.

Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, NY 10016
**(212) 245-1000 or toll-free at (877) 468-8836**
ojq@outtengolden.com

The Hayber Law Firm, LLC
221 Main Street, Suite 502
Hartford, CT 06106
**(860) 522-8888**
rhayber@hayberlawfirm.com

[INSERT Settlement Admin Info]

**PLEASE DO NOT CONTACT THE COURT ABOUT THIS NOTICE, THE CASE OR THE SETTLEMENT.**

DATED:      [Insert Date of Mailing], 2014